The Honorable Mike Huckabee Governor of Arkansas State Capitol Building, Suite 250 Little Rock, Arkansas 72201
Dear Governor Huckabee:
I am writing in response to your request for an opinion on two questions concerning the rights of poll workers. You state that "[m]embers of the Pulaski County Election Commission, along with the attorney for the commission, have recently stated that the commission is not bound by any rules of practice or procedure in the consideration of allegations regarding poll workers." You have asked my opinion on the following two questions:
 1. In the consideration of complaints against poll workers, or even in the consideration of a complaint of any type, is the Pulaski County Election Commission bound to follow the provisions of Title 7 of the Arkansas Code, specifically A.C.A. Section 7-4-118?
 2. What procedural and substantive due process rights are poll workers entitled to, in order to ensure their rights are protected in the event that allegations are wholly baseless?
RESPONSE
It is my opinion, in response to your first question, that the Pulaski County Board of Election Commissioners is not required to follow the provisions of A.C.A. § 7-4-118. That statute applies to proceedings of the State Board of Election Commissioners. I will note one other statute in Title 7, however, that may be of relevance in this regard. Act 270 of 2003, codified at A.C.A. § 7-1-109, requires the county board to send written complaints concerning election law violations or irregularities to the county clerk and prosecuting attorney. See A.C.A. § 7-9-109
(Supp. 2003). In response to your second question, assuming the requisite state action and a constitutionally protected interest (questions that must be answered with reference to all the facts of a particular situation), poll workers are in my opinion entitled as a matter of procedural due process to notice and an opportunity to respond to such complaints. With regard to substantive due process rights, governmental actors are generally prohibited from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.
Question 1 — In the consideration of complaints against poll workers, oreven in the consideration of a complaint of any type, is the PulaskiCounty Election Commission bound to follow the provisions of Title 7 ofthe Arkansas Code, specifically A.C.A. Section 7-4-118?
In my opinion, as stated above, a county board is not required to follow the provisions of A.C.A. § 7-4-118. The provisions of that section were adopted by virtue of Act 1161 of 2003. That act was entitled "An Act Concerning Revisions To The State Board Of Election Commissioners; And For Other Purposes." The act, among other things, added the language of A.C.A. § 7-4-118, which contains detailed procedures for evaluating violations of election and voter registration laws. It is clear, in my opinion, that this statute is restricted to the actions of the State Board. The statute, in subsection (a)(1), states that "[t]he State Boardof Election Commissioners may investigate alleged violations, render findings, and impose disciplinary actions according to this subchapter for violations of election and voter registration laws. . . ." (Emphasis added). The statute thereafter repeatedly refers to the "the board." Id.
at (a)(2); (a)(3); (b)(1); (b)(2); (b)(3); (b)(4)(A); (b)(4)(B); (b)(4)(C); (b)(4)(D); (b)(4)(E); (b)(4)(F); (c); (d); (e)(1); (e)(2)(A); (e)(2)(B); (e)(2)(C); (f)(1); (f)(2); (f)(3); (g)(1); (g)(2) and (g)(3).
Because your question also inquires more broadly as to whether the county board is "bound to follow the provisions of Title 7" in considering complaints, I will point out one other statute of relevance. Section7-1-109 (Supp. 2003) provides as follows:
 Following a written complaint concerning any election law violation or irregularity to the county board of election commissioners, the written complaint shall be sent by the county board to the appropriate county clerk and appropriate prosecuting attorney for evaluation.
This provision was also passed in 2003, by virtue of Act 270.
In my opinion, therefore, a county board of election commissioners is not required to comply with the provisions of A.C.A. § 7-4-118. It is, however, in the event of a written complaint concerning "any election law violation or irregularity," required to send such written complaint to the county clerk and prosecuting attorney for evaluation. To the extent your question's reference to "complaints against poll workers" or "a complaint of any type" encompasses alleged election law violations or irregularities, the county board must comply with this statute.[1]
Question 2 — What procedural and substantive due process rights are pollworkers entitled to, in order to ensure their rights are protected in theevent that allegations are wholly baseless?
Assuming the requisite "state action" for purposes of the Due Process Clause and a constitutionally protected property or liberty interest, questions which may depend upon the facts of a particular case,[2] as a general matter procedural due process entitles public employees to notice and an opportunity to respond to such complaints. With regard tosubstantive due process rights, governmental actors are generally prohibited from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty. Again, resolution of the issue may depend upon the particular facts.
In Williams-El v. Johnson, 872 F.2d 224 (8th Cir. 1989), the court distinguished substantive from procedural due process as follows:
 Procedural due process is about when and how the state may deprive a person of property or liberty; it involves the procedures a state must follow before a right is taken away. Substantive due process, on the other hand, proscribes "certain government actions regardless of the fairness of the procedures used to implement them" Daniels [v. Williams, 474 U.S. 327 (1986)], supra, 474 U.S. at 331, 106 S.Ct. at 665.
Id. at 228-229.
I assume your question inquires primarily about procedural due process. As stated in deLlano v. Berglund, 282 F.3d 1031 (8th Cir. 2002):
 Procedural due process claims require a two-step analysis. First, a plaintiff must prove that as a result of state action the plaintiff was deprived of some life, liberty, or property interest. Second, the plaintiff must prove that the state's deprivation of that interest was done without due process.
Id. at 1034.
With regard to the first step, the Eighth Circuit has stated:
 Procedural due process requirements only apply, however, to the deprivation of interests encompassed by the Fourteenth Amendment's protection of property and liberty. Board of Regents of State Colleges v. Roth, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548
(1972). The Fourteenth Amendment's Due Process Clause does not convert the federal courts into arbitral forums for review of commonplace personnel decisions that public agencies routinely make. Wargat v. Long, 590 F. Supp. 1213, 1214 (D.Conn. 1984).
Miller v. Lovell, 14 F.3d 20 (8th Cir. 1994) at 21.
With regard to protected "property interests" in a particular position or employment, the court has stated:
 A person must have a legitimate claim of entitlement to his or her employment to have a property interest in it. Roth, 408 U.S. at 577, 92 S.Ct. at 2709. The existence of a property interest must be determined with reference to state law. Bishop v. Wood, 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976). Typically, this interest arises from contractual or statutory limitations on the employer's ability to terminate an employee. Id. A property interest in employment can also be created by implied contract, arising out of customs, practices, and de facto policies. Perry v. Sindermann, 408 U.S. 593, 601-02, 92 S.Ct. 2694, 2699, 2700, 33 L.Ed.2d 570 (1972).
Winegar v. Des Moines Independent Com. School District, 20 F.3d 895 (8th Cir. 1994) at 899.
With regard to a protected liberty interest, the court has stated:
 An employee's liberty interests are implicated where the employer levels accusations at the employee that are so damaging as to make it difficult or impossible for the employee to escape the stigma of those charges. Shands v. Kennett, 993 F.2d 1337, 1347 (8th Cir. 1993), cert. denied, 510 U.S. 1072, 114 S.Ct. 880, 127 L.Ed.2d 75 (1994). The requisite stigma has generally been found when an employer has accused an employee of dishonesty, immorality, criminality, racism, and the like. See id. (and cases cited therein).
Winegar, supra at 899.
With regard to a liberty interest, an employee must show that the employer made the allegations public (see Allen v. City of Pocahontas,Ark., 340 F.3d 551 (8th Cir. 2003)); and that the accusations seriously damage the employee's standing. Johnson v. City of West Memphis,113 F.3d 842 (8th Cir. 1997). Claims of unsatisfactory performance or general misconduct are insufficient. See Mascho v. Gee,24 F.3d 1037 (8th Cir. 1994).
Assuming an individual with a constitutionally protected property or liberty interest and a deprivation of that interest, "[t]he Supreme Court has held that due process requires . . . notice of the charges against them, an explanation of the evidence, and an opportunity to respond."deLlano v. Berglund, 282 F.3d 1031 (8th Cir. 2002) at 1034-35, citingCleveland Bd. of Educ. v. Loudermill, 1035, 470 U.S. 532, 542 (1985).
"Generally, `some kind of a hearing' is required prior to discharge.Loudermill, 470 U.S. at 542. The court in Loudermill held that a full evidentiary hearing was not required prior to termination of employment and that the essential requirements are notice of the charges and an opportunity to respond." Miller v. City of Little Rock, 23 Ark. App. 91,743 S.W.2d 9 (1988) at 92-93.
With regard to whether governmental actions violate substantive due process, the Eighth Circuit Court of Appeals has stated as follows:
 Under the rubric of the substantive due process clause, the Constitution prohibits "`the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" Moran v. Clarke, 296 F.3d 638, 643 (8th Cir. 2002) (quoting Weiler v. Purkett, 137 F.3d 1047, 1051 (8th Cir. 1998) (en banc)).
 Thus, substantive due process claims are analyzed under two tests. First, the state is forbidden from infringing certain "fundamental" liberty interests at all — no matter what process is provided — unless the infringement is narrowly tailored to serve a compelling state interest. Second, the state's conduct must shock the conscience or otherwise offend our judicial notions of fairness, or must be offensive to human dignity.
Pediatric Specialty Care v. Arkansas D.H.S., 364 F.3d 925 (8th Cir. 2004) at 931-932.
The above legal tests will determine the procedural and substantive due process rights of poll workers. Again, the law must be applied to individual factual situations to outline the exact contours of the rights afforded.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:ECW/cyh
[1] There may be a factual issue as to whether the controversy giving rise to your question involves an alleged election law violation or irregularity or some type of "personnel" action against the poll worker.
[2] I have found no helpful precedent on whether "poll workers" who, under current law, are apparently appointed election-by-election (see A.C.A. § 7-4-107 (Supp. 2003)), have a protected property interest in their appointments.