Jose NATAL–ROSARIO,
et al., Plaintiff(s)

v.

**PUERTO RICO POLICE
DEPARTMENT, et al.,**
Defendant(s).

Civil No. 08–1780 (JAG).

United States District Court,
D. Puerto Rico.

April 2, 2009.

Julio Cesar Alejandro–Serrano, Nicolas Nogueras–Cartagena, Amauri D. Padilla–Garcia, Nicolas Nogueras Law Offices, San Juan, PR, for Plaintiff.

Jose J. Gueits–Ortiz, Department of Justice of Puerto Rico, Office of General Litigation Unit VII, Isabel Munoz–Acosta, U.S. Attorney's Office, District of Puerto Rico, San Juan, PR, for Defendants.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.

Pending before the Court is Defendants José Caldero López ("Caldero") and Ismael Morales' ("Morales") (collectively "Defendants") motion to dismiss. (Docket No. 41). For the reasons set forth below, the Court **GRANTS** in part and **DENIES** in part Defendants' motion.

## FACTUAL AND PROCEDURAL BACKGROUND

On December 31, 2008, Plaintiff José E. Natal Rosario ("Natal"), Katherine M. Álvarez ("Álvarez") and the conjugal partnership composed by both of them (collectively "Plaintiffs") filed the present complaint against Defendants, Puerto Rico Police Department ("PRPD"), Jane Erickson ("Erickson"), Miguel Marrero ("Marrero"), Iván López ("López"), Carlos Nazario ("Nazario"), and Mercedes Torres ("Torres") requesting money damages under the Civil Rights Act, 42 U.S.C. § 1983, the Fourth, Fifth, and Fourteenth Amendment of the Constitution of the United States, and the laws of the Commonwealth of Puerto Rico. Essentially, Plaintiffs allege that Natal was an agent of the PRPD who was deputized by the Federal Bureau of Investigations ("FBI") to work in the Domestic Counter Terrorism Unit at that agency (hereinafter referred to as "the Unit"). According to Plaintiffs, on or about November 2006, Marrero and Torres, both of whom work for the FBI, targeted Natal for removal from the Unit. Plaintiffs aver that both of these federal officers implemented a systematic and continuous scheme to discredit Natal with his superiors and to tarnish his reputation within the Unit on the basis that Natal engaged in corrupt acts.

Plaintiffs allege that on April 11, 2008, co-defendant Nazario, a sergeant in the PRPD, and Marrero required that Natal appear in the offices of co-defendant Erickson, who is the Special Agent in Charge of the FBI. Once in Erickson's office, Natal was allegedly informed that it had come to the FBI's attention that he had sold information to a private citizen. According to Plaintiffs, Natal denied the charges and Erickson indicated to Natal that he should undergo a polygraph examination. Natal allegedly agreed to the exam.

Plaintiffs contend that co-defendant López, an FBI agent, was supposed to administer the exam but instead questioned Natal about other matters that were not related to the alleged incident of selling information to a private citizen. According to Plaintiffs, López refused to conduct the polygraph examination and instead determined that Natal was lying. Plaintiffs

claim that said determination was communicated to Erickson, who thereafter decided to remove Natal from the Unit. After Natal was removed from the Unit, he allegedly returned to the PRPD where he was informed by co-defendant Caldero, who is a supervisor in the PRPD, that he would no longer be assigned to detective work because López had determined that he was corrupt. Plaintiffs aver that Natal was then transferred to Field Operations in the PRPD.

Plaintiffs claim that Natal's separation from the Unit and transfer from his detective work to the Fields Operation in the PRPD was done without due process of law in violation of his rights under the Fifth and Fourteenth Amendment. Furthermore, Plaintiffs allege that the act of intercepting Natal and interrogating him violated his rights under the Fourth Amendment. Plaintiffs also proffer several state law claims. (Docket No. 35).

On January 21, 2009, Defendants moved to dismiss Plaintiffs' claims against them. Specifically, Defendants aver that Plaintiffs' Fifth Amendment due process claim against them should be dismissed because neither of them are federal agents. Moreover, Defendants contend that Plaintiffs' Fourth Amendment claim against them should be dismissed because they were not involved in Natal's interrogation. Additionally, Defendants allege that Plaintiffs' Fourteenth Amendment claim against Morales should be dismissed because the complaint merely identifies him as Interim Director of the Joint Task Force Unit of the PRPD and does not allege any acts committed by Morales that would constitute a Fourteenth Amendment violation. Further, Defendants allege that the complaint does not contain sufficient factual allegation to sustain Plaintiffs' Fourteenth Amendment claim against Caldero. Alternatively, Defendants aver that if this Court were to find that Plaintiffs have adequate-ly proffered claims under the Constitution of the United States, they are entitled to qualified immunity. Defendants also allege that Álvarez' claims against them should be dismissed because she lacks standing to bring any claims under section 1983. Finally, Defendants request that Plaintiffs' supplemental state law claims also be dismissed. (Docket No. 41). On January 26, 2009, Plaintiffs opposed Defendants' motion to dismiss. (Docket No. 43).

## STANDARD OF REVIEW

1. *Federal Rule of Civil Procedure 12(b)(6) Motion to Dismiss Standard*

In *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Supreme Court recently held that to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "a plausible entitlement to relief." *Rodriguez–Ortiz v. Margo Caribe, Inc.,* 490 F.3d 92, 95–96 (1st Cir.2007) (citing *Twombly,* 127 S.Ct. at 1967). While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to "nudge [plaintiffs'] claims across the line from conceivable to plausible." *Twombly,* 127 S.Ct. at 1974. Accordingly, in order to avoid dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* at 1965.

The Court accepts all well-pleaded factual allegations as true, and draws all reasonable inferences in plaintiff's favor. *See Correa–Martinez v. Arrillaga–Belendez,* 903 F.2d 49, 51 (1st Cir.1990). The Court need not credit, however, "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" when evaluating the Complaint's allegations. *Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir.1996). When opposing a Rule 12(b)(6) motion, "a

plaintiff cannot expect a trial court to do his homework for him." *McCoy v. Massachusetts Institute of Tech.*, 950 F.2d 13, 22 (1st Cir.1991). Plaintiffs are responsible for putting their best foot forward in an effort to present a legal theory that will support their claim. Id. at 23 (citing *Correa–Martinez*, 903 F.2d at 52). Plaintiffs must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable theory." *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir.1988).

## DISCUSSION

 Plaintiffs bring the present suit under section 1983. It is well settled law that section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (internal citations and quotation marks omitted). Under section 1983, a plaintiff must first show that "the conduct complained of was committed by a person acting under color of state law." *Destek Group, Inc. v. State of New Hampshire Public Utilities Commission*, 318 F.3d 32, 39 (1st Cir.2003); *DiMarco–Zappa v. Cabanillas*, 238 F.3d 25, 33 (1st Cir.2001). Secondly, a plaintiff must show the defendant's conduct deprived a person of rights, privileges, or immunities secured by the Constitution of the United States. *Gutierrez–Rodriguez v. Cartagena*, 882 F.2d 553, 559 (1st Cir.1989). "To satisfy the second element, plaintiffs must show that the defendants' conduct was the cause in fact of the alleged deprivation." *Rodriguez -Cirilo v. Garcia*, 115 F.3d 50, 52 (1st Cir.1997).

 In the case at bar, Defendants are all state officials. As such, the first requirement of a section 1983 claim has been met. Thus, this Court must next address whether Plaintiff has a valid constitutional claim under the Fourth, Fifth, and Fourteenth Amendment of the Constitution of the United States. In determining whether Plaintiffs have proffered adequate claims under the Constitution of the United States, this Court is mindful that in civil rights cases, there is no heightened pleading standard. *Aponte–Torres v. Univ. of P.R.*, 445 F.3d 50, 55 (1st Cir. 2006) (internal citations omitted). This Court must ask whether the complaint satisfies the basic notice pleading requirements of the Civil Rules. *Id.* "To meet those requirements, a complaint must contain 'a short and plain statement of the claim showing that the pleader [s are] entitled to relief,' Fed.R.Civ.P. 8(a)(2), and must 'give the defendants fair notice of what the plaintiff[s'] claim is and the grounds upon which it rests.'" *Id.* (internal citations omitted) (alterations in original).

### 1. Fourth Amendment

 The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "The primary purpose of the Fourth Amendment is 'to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals.'" *United States v. Ford*, 548 F.3d 1, 4 (1st Cir.2008) (internal citations omitted). Plaintiffs argued in their complaint that Natal's Fourth Amendment rights were violated when he was interrogated and interviewed against his will. However, pursuant to the complaint, the only persons involved in Natal's alleged interrogation incident are López, Marrero, Nazario, and Erickson.[1] The complaint is completely

---

**1.** Upon reading the complaint, and after drawing all inferences in Plaintiffs' favor, this Court finds that only these co-defendants

devoid of any allegation that Defendants were involved in this incident. Hence, the complaint fails to satisfy the notice pleading requirement because it does not contain any statement showing that Plaintiffs are entitled to relief under the Fourth Amendment for any acts committed by Defendants. Thus, Defendants have not been given fair notice of the grounds upon which Plaintiffs' Fourth Amendment claim against them rests. As a result, Plaintiffs' Fourth Amendment claims against Defendants must be dismissed.

### 2. *Fifth Amendment*

■ Defendants contend that Plaintiffs' Fifth Amendment claims against them should also be dismissed because the Due Process Clause of the Fifth Amendment is inapplicable to them as they are employees of the Commonwealth of Puerto Rico. The Due Process Clause of the Fifth Amendment states in pertinent part that: "No person shall ... be deprived of life, liberty, or property, without due process of law ..." U.S. Const. amend. V. The Fifth Amendment Due Process Clause applies only to actions of the federal government not those of state governments. *Public Utilities Commission v. Pollak,* 343 U.S. 451, 461, 72 S.Ct. 813, 96 L.Ed. 1068 (1952); *see also Martinez–Rivera v. Ramos,* 498 F.3d 3, 8 (1st Cir.2007).

Defendants are state officials. As such, the Fifth Amendment is inapplicable to them. Therefore, Plaintiff's Fifth Amendment claims against Defendants must be dismissed.

### 3. *Fourteenth Amendment*

■ Defendants also moved to dismiss Plaintiffs' due process claim under the Fourteenth Amendment. "To establish a 'procedural due process claim under section 1983, a plaintiff must allege first that [he] has a property interest as defined by state law and, second, that the defendants, acting under color of state law, deprived [him] of that property interest without [a] constitutionally adequate process.'" *Diaz–Pedrosa v. P.R. Power Auth.,* 555 F.Supp.2d 306, 315 (D.P.R.2008) (internal citations omitted) (alterations in original). Generally, due process entitles public employees deprived of a protected property interest to pre-deprivation procedural safeguards, which at minimum must contain the following three components: "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 546, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). However, when the value of a pre-deprivation procedure is negligible, an employee deprived of a protected interest is entitled to post-deprivation procedures. *Gilbert v. Homar,* 520 U.S. 924, 930, 117 S.Ct. 1807, 138 L.Ed.2d 120 (1997).

■ In order for Plaintiffs to show that Natal had a constitutionally protected interest in the position he previously held, Plaintiffs must establish that Natal had a "legitimate expectation of continued employment [deriving] from a statute, a contract, or an officially sanctioned rule of the workplace." *Id.* (internal citations omitted) (alteration in original). Usually, a career employee as defined by Puerto Rico law has a protected property interest in his employment. *Galloza v. Foy,* 389 F.3d 26, 34 (1st Cir.2004) (citing P.R. Laws Ann. tit. 3, § 1350(8)).[2] Pursuant to Puer-

---

were involved in Natal's interrogation/interview, which is the basis for Plaintiffs' Fourth Amendment claim.

**2.** Unlike career employees, trust employees are of free selection and removal and, therefore, do not have a constitutionally protected interest in that position. *Diaz–Pedrosa,* 555 F.Supp.2d at 314–15.

to Rico law, a career employee is a person selected on merit that can only be removed for cause. *Id.* Accordingly, status as a career employee guarantees that the employee will not be dismissed or demoted from the career position without good cause. *See Gonzalez Vega v. Hernandez Colon,* 682 F.Supp. 131, 134 (D.P.R.1988).[3] However, such status does not necessarily protect an employee from transfers or reassignments within the PRPD unless the transfer or reassignment constitutes a demotion. *See id.* at 134–36; *see also Ferraro v. City of Long Branch,* 23 F.3d 803, 807 (3d Cir.1994) (noting that a transfer, which involves no loss of pay and no loss of rank does not deprive a plaintiff of a protected liberty or property interest); *Ezekwo v. New York City Health & Hosps. Corp.,* 940 F.2d 775, 788 (2d Cir.1991) (same).

■■■ Natal has a career position with the PRPD. Plaintiffs' Fourteenth Amendment claim is premised on: 1) Natal's removal from the Unit and 2) his transfer from his duties as a detective to the Field Operations division where he was no longer eligible for selection for federal deputy positions with the FBI and other federal agencies. Natal's removal from the Unit was a decision made by López and Erickson, who are not presently before this Court requesting the dismissal of the claims against them. Thus, the only alleged acts that are pertinent to determine whether Plaintiffs pled an adequate due process claim against Defendants is Natal's transfer to the Field Operations division. To continue our analysis, this Court must determine that the transfer allegation is sufficient to show at the motion to dismiss stage that Natal was deprived of a protected property interest.

In their complaint, Plaintiffs make no mention that the transfer was accompanied with a loss in salary. However, Plaintiffs do claim that the transfer resulted in Natal not working in detective work and in being ineligible to work with the FBI or other federal agencies. Drawing all reasonable inferences in Plaintiffs' favor as this Court must do here, leads us to conclude for purposes of this motion to dismiss that Natal's transfer constituted a demotion. Thus, Plaintiffs' allegation that Natal was transferred to the Field Operations division of the PRPD is sufficient at the motion to dismiss stage to show that he was deprived of a protected property interest.

■■■ Next, this Court must determine whether Plaintiffs have satisfied the notice pleading requirements with regards to their allegation that Defendants violated Natal's property interest without a constitutionally adequate process. This Court finds that Plaintiffs have satisfied the burden imposed by this standard. Specifically, Plaintiffs averred that Natal was "merely" informed of his transfer. Therefore, this Court accepts for purposes of this analysis that Plaintiff was deprived of his property interest without a constitutionally adequate process.

Plaintiffs have proffered an adequate Fourteenth Amendment claim. Now, this Court must determine whether Plaintiffs have adequately alleged that Defendants violated Natal's Fourteenth Amendment Due Process right. In making this determination, it is important to note that Defendants are both supervisors in the PRPD.

■■■ Under section 1983, supervisory liability can only be grounded on the supervisor's own acts or omissions either

---

**3.** *See Evans v. Morgan,* 304 F.Supp.2d 1100, 1104 (W.D.Wis.2003) (finding that plaintiff's allegation that he was demoted was sufficient at the motion to dismiss stage to show that he was deprived of a protected property interest).

through the supervisor's direct participation in the unconstitutional conduct, or through conduct that amounts to condonation or tacit authorization. *Whitfield v. Melendez–Rivera*, 431 F.3d 1, 14 (1st Cir. 2005) (internal citation omitted). "Absent direct participation, a supervisor may only be held liable where (1) the behavior of [his] subordinates results in a constitutional violation and (2) the [supervisor's] action or inaction was affirmatively linked to the behavior in the sense that it could be characterized as supervisory encouragement, condonation or acquiescence or gross negligence … amounting to deliberate indifference." *Id.* (internal citations and quotation marks omitted). A supervisor's action or inaction amounting to deliberate indifference will be found only if "it would be manifest to any reasonable official that his conduct was very likely to violate an individual's constitutional rights." *Germany v. Vance*, 868 F.2d 9, 18 (1st Cir.1989). "The 'affirmative link' requirement contemplates proof that the supervisor's conduct led inexorably to the constitutional violation." *Hegarty v. Somerset County*, 53 F.3d 1367, 1380 (1st Cir. 1995) (internal citations and quotation marks omitted).

▆▆▆▆ In the complaint, Plaintiffs alleged that Caldero was the one who informed Natal that he would no longer be assigned to detective work. Furthermore, Plaintiffs averred that Caldero made this decision because he determined that Natal was corrupt. Taking these allegations as true and drawing all inferences in Plaintiffs' favor leads us to conclude that Plaintiffs have satisfied the notice pleading requirement as to Caldero. The allegations contained in the complaint inform Caldero that his direct participation in Natal's transfer is the basis of Plaintiffs' Fourteenth Amendment violation claim against

him. Consequently, Plaintiffs' Fourteenth Amendment claim against Caldero will not be dismissed. However, the complaint is completely devoid of any allegations as to Morales. Basically, the only allegation contained in the complaint as to Morales is that he is the Interim Director of the Joint Task Force Unit of the PRPD. Hence, Plaintiffs have not proffered allegations which give notice to Morales of the grounds upon which the Fourteenth Amendment claim against him rests. Accordingly, Plaintiffs' Fourteenth Amendment claim against Morales will be dismissed.

In sum, Plaintiffs' Fourteenth Amendment claim against Caldero will not be dismissed. However, Plaintiffs' claim on the same grounds against Morales will be dismissed. Accordingly, Plaintiffs' section 1983 claim against Morales must be dismissed.

### 3. *Qualified Immunity*

▆▆▆▆ This Court will now discuss whether the doctrine of qualified immunity bars Plaintiffs' claims against Caldero.[4] Qualified immunity protects public officials from the specter of damages liability for judgment calls made in a legally uncertain environment. *Santana v. Calderon*, 342 F.3d 18, 23 (1st Cir.2003) (citing *Ryder v. United States*, 515 U.S. 177, 185, 115 S.Ct. 2031, 132 L.Ed.2d 136 (1995)). Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The First Circuit employs a three-part test when determining if a public official is

4. Since Plaintiffs' section 1983 claim against Morales will be dismissed, this Court need not decide whether Morales is entitled to qualified immunity.

entitled to qualified immunity: "(1) whether plaintiff's allegations, if true, establish a constitutional violation; (2) whether that right was clearly established at the time of the alleged violation; and (3) whether a similarly situated reasonable official would have understood that the challenged action violated the constitutional right at issue." *Mihos v. Swift*, 358 F.3d 91, 102 (1st Cir. 2004) (citing *Suboh v. District Attorney's Office of Suffolk Dist.*, 298 F.3d 81, 90 (1st Cir.2002); *Harlow v. Fitzgerald*, 457 U.S. 800, 818–19, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). To overcome a qualified immunity defense, a plaintiff must lead the Court to answer all three prongs of this test in the affirmative. *Mihos v. Swift*, 358 F.3d at 98–99. "In order to conclude that the right which the official allegedly violated is 'clearly established,' the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Moreover, in determining whether a similarly situated reasonable official would have understood that the challenged action violated the constitutional right at issue, "the relevant question is whether a reasonable official could have believed his actions were lawful in light of clearly established law and the information the official possessed at the time of his allegedly unlawful conduct." *Singer v. Maine*, 49 F.3d 837, 844 (1st Cir.1995) (internal citations omitted).

▪ As discussed above, Plaintiffs have asserted a viable Fourteenth Amendment claim against Caldero. "[T]aking the allegations in the light most favorable to Plaintiff, this Court cannot conclude that the constitutional rights implicated were not clearly established under then-existing law so that a reasonable officer would have known that his conduct was unlawful."

*Rivera v. De La Familia*, No. 05–1109, 2006 WL 852066, **7–8, 2006 U.S. Dist. LEXIS 19558, at *23 (D.P.R. Mar. 28, 2006). It is arguable that the right to due process under the Fourteenth amendment is a clearly established right and that any reasonable employee would understand that he or she cannot deprive a person of a property interest without a constitutionally adequate process. However, without a more developed record this Court cannot not find that Plaintiffs' Fourteenth Amendment right was clearly established so that a reasonable officer would have known that his conduct was unlawful. Therefore, this Court will deny the motion to dismiss on qualified immunity grounds.

### 4. *Álvarez Claims*

According to Defendants, Álvarez'[5] claims against them should be dismissed because section 1983 actions are personal and she was not the one who suffered the alleged deprivation of constitutional rights. This Court agrees.

▪ Only when the constitutionally defective conduct or omission is directed at the family relationship do family members have an independent claim under section 1983. *Brown v. Ives*, 129 F.3d 209, 211 (1st Cir.1997); *Robles Vazquez v. Garcia*, 110 F.3d 204, 206 n. 4 (1st Cir.1997). In the case at bar, the complaint lacks any allegation that the alleged acts committed by Defendants were directed at Álvarez and the conjugal partnership. From the face of the complaint it appears that Álvarez and the conjugal partnership rest their section 1983 claim on Natal's alleged civil rights violation and "family members cannot rest a section 1983 claim on the violation of a kin's civil rights." *Rodriguez–Oquendo v. Toledo–Davila*, 39 F.Supp.2d 127, 132 (D.P.R.1999). Accordingly, Álva-

---

5. As mentioned above, Álvarez is the wife of Natal.

rez and the conjugal partnership's claims must be dismissed from the present case.[6]

### 5. *Supplemental Law Claims*

 Defendants also argued that Plaintiffs' state law claims should be dismissed. This Court should decline to exercise supplemental jurisdiction over a plaintiff's supplemental jurisdiction claims when all federal claims are dismissed. *See Camelio v. American Federation,* 137 F.3d 666, 672 (1st Cir.1998) (holding that "the balance of competing factors ordinarily will weigh strongly in favor of declining jurisdiction over state law claims where the foundational federal claims have been dismissed at an early stage in the litigation") (internal citations omitted). Álvarez' federal and supplemental law claims will be dismissed. However, since this Court will not dismiss all the federal claims against Caldero, the remaining state law claims against him will not be dismissed. All federal claims against Morales will be dismissed. Accordingly, this Court will not exercise supplemental jurisdiction over the remaining state law claims against Morales.

### CONCLUSION

For the reasons stated above, the Court hereby **GRANTS** in part and **DENIES** in part Defendants' motion to dismiss. (Docket No. 41). Álvarez and the conjugal partnership's claims in the present case shall be dismissed. Moreover, Plaintiffs' Fourth and Fifth Amendment claims against Caldero shall be dismissed. Furthermore, all claims against Morales shall be dismissed. Partial Judgment shall be entered dismissing Plaintiffs' claims against Morales and dismissing Álvarez and the conjugal partnership's claims as to all defendants in the case at bar.

IT IS SO ORDERED.

---

[6]. This Court notes that the other defendants in the case at bar have not moved for the dismissal of Álvarez and the conjugal partnership's claims. Nonetheless, this Court finds that Álvarez and the conjugal partnership's claims against all defendants should also be dismissed. "Sua sponte dismissal should be used sparingly, but is appropriate if it is 'crystal clear that the plaintiff cannot prevail and that amending the complaint would be futile.' " *TMTV Corp. v. Pegasus Broad. of San Juan,* 490 F.Supp.2d 228, 236 (D.P.R.2007) (citing *Chute v. Walker,* 281 F.3d 314, 319 (1st Cir.2002)).